The next case on our call is Agenda No. 3, No. 128373, People of the State of Illinois v. Daryl Fair. Counsel to our appellant, are you prepared to speak? Yes, good morning. May it please the Court, Counsel. I'm Deborah Lovey from the Exoneration Project, and it is truly my honor and privilege this morning to represent Daryl Fair, the appellant. Mr. Fair was a college student and a former U.S. Marine at the time of his 1998 arrest, and he has grown into a valued mentor, a gifted artist, and a cherished family member. He can't be here this morning, but he is listening via live stream, and he has family members and supporters, including his mother and his brother in the gallery, and I'd like to thank them for attending on his behalf. Not one of the dozens of eyewitnesses to this crime has ever implicated Mr. Fair. The only evidence ever incriminating him was the unsigned statement at issue here in this appeal, a statement that contradicted the eyewitness testimony and had demonstrable irregularities. It was made after 30 hours plus of interrogation, after two gun threats, after former Detective McDermott's violent assault on Mr. Fair's knee, after a denial of asthma medication, food, the right to counsel despite repeated requests, and no witness in any proceeding has ever denied any of these allegations or hearing the outcry about them. The lower courts erred in denying relief without requiring the State to rebut any of these troubling claims and in not considering the totality of the circumstances and adjudicating whether a new trial was required. Mr. Fair has been wrongfully incarcerated now for 25 years, and we respectfully ask that the Court reverse his conviction and suppress the statements that was used against him. Kagan. May I ask some questions about framework? Yes. And process about where we are? Because I'd like to start with the legal issues before we get into the factual issues, if you like. Of course. We know that what occurred here is that there had been a number of appeals and post-conviction petitions in this case, and the courts have reviewed them. And then a petition was filed with the Illinois Torture, Inquiry, and Relief Commission, which conducted hearings and made a determination. Now, the statute is somewhat unusual, and I think I'd like to talk a little bit about the statute, about what it is and how it was meant to work, and then we can talk about whether or not the process created by the statute was, in fact, valid. Of course. I think that's the next piece. Sure. But let's start with this. The definitions in the statute begin with this. A claim of torture means a claim on behalf of a living person convicted of a felony in Illinois asserting that he was tortured into confessing to the crime for which he was convicted. Now, interestingly, the statute doesn't define torture. A dictionary definition would be the action or practice of inflicting severe pain or suffering on someone as a punishment or in order to force them to do or say something. So that's how the statute defines a claim of torture. And then the next piece is after the commission hears evidence. If the commission concludes that there is sufficient evidence of torture, it can then move on to judicial review. In other words, the chair of the commission refers the case to the chief judge of the circuit court for assignment for consideration. Correct. So if you just stop right there, when we talk about the issues, I think I really am interested in here is what's supposed to happen when the case is referred to the circuit court? What are the outlines of that kind of hearing and what does the statute provide? Obviously, it's something different from the Post-Conviction Act. It's something different. In fact, a number of places in the statute it talks about other, notwithstanding the status of any other post-conviction proceedings. Or it says later, a claim of torture asserted through the commission shall not adversely affect the convicted person's rights to other post-convicted reliefs. So apparently this statute has created something different from what we understand as the Post-Conviction Act. So that's really my question to you is the Act refers to judicial review of the commission's findings. So what does that mean to you as to what the trial court is supposed to do? And counsel, could I piggyback on that question? Sure. Not to confuse you, but in answering that question, I would like you to speak to the burden of proof. Who has it and what is it? Absolutely. Thank you. Excellent questions. And I guess that is sort of the million-dollar question here about the Torture Act. What we know about it is it's an extraordinary act. And when you take a step back and you think about it, I mean, the fact that Illinois passed the Torture Act, because we have all these people who were tortured by police officers into confessing, it is an extraordinary remedy. And it is meant, when you look at both the language, as I'll get into, and the intent, to be something that is easier, a more streamlined process, a way of getting past the procedural hurdles that a post-conviction petitioner might face otherwise, like race judicata, things like that. So if you look at the Section 50 of the Torture Act, that talks about sort of what happens at this judicial review, which is what I believe you're asking about. And we learned that the court, first of all, can receive proofs by affidavits, depositions, testimony, evidence. And then it just says if the court finds in favor of the petitioner, it shall enter the appropriate order. And those orders can include everything from suppression to rearrangement to a certificate of innocence. So there's a broad range of what could happen. But the Act doesn't say what that needs to look like, what the courts actually do with it. So I did a survey of all of the cases that have come through thus far through the Turk Act, and I found they fell into sort of three different camps. In one camp, the courts looked at whether the outcome of a suppression hearing at the time of trial would likely have been different based on the new evidence, particularly if the officers, who we now know were torturers, were impeached with their abusive tactics. That's cases like George Anderson, where they reversed and they gave a new trial with the statement suppressed. The second sort of camp are cases where the court just has a suppression hearing. It goes back and it says, all right, you have all this new evidence of innocence. Let's have a suppression hearing. And in that, that's a case like Jackie Wilson, where the appellate court reversed with a new trial with a statement suppressed. Or People v. Christian, where the court held a suppression hearing and found that the petitioner didn't meet his burden and denied relief. And then the third camp that I found were cases where they just imposed post-conviction standards, and they just treated it like a third-stage post-conviction hearing and held to the same standards as post-conviction standards. And that's a case like Gibson. The last category, I guess, that I would include is that no court has treated it as a re-adjudication of the question of whether there was torture except Fair 1. In Mitchell, in People v. Mitchell, which included People v. Fair originally, the court, the circuit court basically upon referral said, I'm not going to conduct a hearing at all. I don't believe there was torture. The State or we appealed that. At the State lawsuit appeal, we prevailed, but it was remanded and there had to be a hearing. So the appellate court ruled that there had to be a hearing. And then the hearings that we've seen thus far have fallen into one of those camps. I don't believe that the Torture Act says it has to be one thing in particular, given the broad range of remedies that the courts can input or can implement. It does use the expression in two different places, judicial review. Yes. So that seems, I would suggest, that it seems to have something to do with the determination by the commission. I mean, obviously what we're talking about is that you'd like to argue that other issues could be raised. And then the other side is, well, no, shouldn't we just be looking at what occurred before the commission? And this idea of judicial review seems to suggest that it's a narrower kind of hearing. Well, if I may, I'd like to repeat, I don't believe other things should be reviewed. I believe that the torture claim, that the basis, the coercion is what is at issue for the court. The problem is that it's not just parsing out, well, what is torture? Does this aspect constitute torture? What about that aspect? What about that aspect? It is the totality of the circumstances. Once you have a torture claim that is reviewed by the courts, this Court has been abundantly clear that when looking at suppression and coercion issues, you have to look at the totality of the circumstances. And frankly, the State has conceded that you have to look at the totality of the circumstances. I mean, this is a really unusual case where the Attorney General filed a brief on behalf of the Torture Commission in which he argues that the courts should have been looking at the totality of the circumstances. And in addition, the State's own brief, I believe it's at page 49, also argues that you should be looking at the totality of the circumstances. And so the totality of the circumstances, for example, in this case. More than just some kind of physical abuse. We should also be looking at, for example, the issue about Miranda warnings. That doesn't sound like torture. That sounds like a legal constitutional claim that could certainly be pursued in, again, as the statute says, other post-conviction proceedings. But how does that figure into torture? So, and again, in order to make sure that this isn't a more challenging statute to achieve relief on than the post-conviction act or any other, I mean, to make it to believe that it's just torture and parsing out only what constitutes torture would make this an almost impossible burden. The idea of totality of the circumstances is what we need to look at once you have a torture victim who has used this vehicle to appear before the courts is whether or not his confession was coerced. And that should be what the inquiry is that the Court is conducting. And when you're looking at coercion, you can't parse out the different things. I mean, the denial of a right to an attorney is extremely important in a coercion claim, because Mr. Fair's testimony was that he believed that, you know, at this point, that the rules were broken. You know, the police officers, they weren't giving him his asthma medication. They weren't letting him have an attorney, even though he knew he was entitled to a right to an attorney, and he kept asking for it. They wouldn't feed him. They wouldn't let him sleep. And they were kicking him and violently assaulting him. And they were threatening him with a gun. And when you put all that together, you know, he knew that his will was overboard. He was coerced. And to try and separate out, well, which of those different things is torture, I think defies the purpose of what this Act is as a vehicle for the victims who were being tortured to have a way of presenting to the court, you know, is this a coerced confession that we should be suppressing. Could you address Justice Holderway's question about burden? Now, obviously, in a straight-up case, what we have is a motion to suppress, and we kind of understand the statements, and we kind of understand what the rules are there. Do the rules change in the context of the statute? Well, I would posit they certainly shouldn't make it harder for a Petitioner to attain relief than if he had brought his suppression claim via some other mechanism. So if he brought his suppression claim via the Post-Conviction Act or even via pretrial suppression, so if the court below is conducting a – if the circuit court is conducting a hearing on what the likely outcome of a suppression hearing should have been, it should be the exact same standards that are used in a suppression hearing. And those are set forth in cases like Slater and Richardson. I mean, the defendant presents the initial case of my statement was involuntary. The burden of proof shifts to the State to rebut those allegations by the preponderance of the evidence. And then the Petitioner holds the ultimate burden of persuasion. And that's where the problem happened here, was the State never met its burden. The State didn't even attempt to meet its burden. The only witness it put on was an hour-30-plus who said, you know, well, to me, he was happy to talk to me by that point. And even though the State's attorneys had a very anomalous statement that he filled out, you know, that he submitted, he couldn't speak to what happened to the first 30 hours. No detective has ever denied that McDermott violently assaulted Mr. Fair. Nobody has ever denied hearing the outcry that Mr. Fair testified about that he was telling the other officers. Nobody has ever denied that they didn't give him his asthma medication or that he was having an asthma attack or all the evidence supporting that he did have that medical condition. So, you know, Mr. Fair met his initial burden. He presented his case that his statement was involuntary. And if this had been heard in any other forum, the State would have been the burden would have been shifted to the State to prove voluntariness by the preponderance of the evidence. And so what this Court does should not be to hold Mr. Fair to a higher standard than he would have been if held to if this had been a traditional suppression motion or if this had been through the Post-Conviction Hearing Act or other acts. Does that address the concern? I know you had initially asked, and I got a little sidetracked. I apologize, about the burdens of proof. And I think it's not quite a clear answer because it depends on what the Court decides to do once it's presented to it. But I think most of the courts, all of them except Gibson, really has done some version of a suppression hearing or a hearing on what, if we can go back to the time of trial, would the outcome likely have been different based on what we now know? And then within that realm, either suppress the statement or order the suppression hearing depending on how fulsome a review was conducted before the Court. So in this case, turning to Mr. Fair and his circumstances, he met his burden of proof. I mean, he put on a powerful case about what happened to him. He testified. He had other witnesses and evidence that corroborated it. And he had, you know, a bunch of evidence that Detective McDermott was part of the original Midnight Crew, that he has an abhorrent history of very similar rights violations and violence. And the State, the burden then shifted under what the Court was doing below this variation on suppression hearing. The burden should have shifted to the State, and the State didn't present any evidence in support of it. And with that, at that point, Mr. Fair was entitled to suppression of the statement. I would ask the Court, I guess, to go a bit further in thinking, you know, since we're thinking about, and I think this case is the appropriate vehicle for considering, you know, what should the statute look like and what should the Court do with these kinds of claims. I agree wholeheartedly with the position presented by the Innocence Project, that this Court in Rice came close to saying that any physical violence during an interrogation renders the statement during that period of custody involuntary. You know, Rice talked about it never being harmless error to torture a suspect. And I would love to see the Court make it explicit that, you know, we have that in the context of Miranda violations. We say that if you violate someone's right to counsel, if they ask for counsel and you violate it, then anything that happens subsequent to that is inadmissible. It seems like we should have a similar rule made explicit in Illinois that if you beat a suspect or you violently assault him, then statements he makes afterwards in that same custodial session are similarly involuntary. Frankly, I think it's astounding that we have such a severe problem, and it really is a good moment for the Court to say that that is something that is unacceptable in Illinois. So I would ask also for an expansion of Rice. And I, you know, counsel. Do we run into a problem of how do we define that? I don't believe so. I believe physical violence would be where I would go. So if I push you, is that physical violence? I'm sorry? If I push you, is that physical violence? Fair point. I guess it needs to be sussed out a little bit more than that. But police officers should not be assaulting suspects. And perhaps it's, you know, the phrase should be, the word should be assault rather than physical violence. Battery. I mean, because there are things we have defined already in the law. And so certainly using a term that we've already defined or that you, I should say you, not we, but you have already defined. Something short of torture? Absolutely. I think any time assaulting a suspect to obtain a confession, this Court should say that that's unacceptable. And that it shouldn't have to rise to the level of putting plastic bags over people's heads or burning them with cattle prods or any of the things that the torture gang was doing ultimately. I think that the time has come to say that physical violence to induce a confession would render any subsequent confession involuntary. What about the amount of time the man has spent in custody, the 31 hours? Do we factor that in to be acceptable? Well, in this case, he was his rights were violated throughout that entire 30-hour period. During that 30-hour period, remember, he went in in the morning. He hadn't had breakfast. He hadn't eaten since the day before. He was deprived of food. He wasn't given his asthma medication. He kept saying, I know I have a right to a lawyer. Can I have my lawyer? And they kept saying no or ignoring it. They threatened him with a gun during that period, in addition to the assault on his knee. When you look at the attenuation factors, I would argue you can't attenuate it. The taint of what happened to him. Just again, going back to structure. Sure. But the Court has to look at the attenuation. The Court has to make that kind of causal link between the physical violence and the confession, right? There has to be some ambiguity. Absolutely. And I guess perhaps I'm overstepping here, because I think that in the case of Mr. Fair, it's an obvious answer. The taint did not dissipate, because he was his rights were violated through that entire 30-hour period. There is no way that by he made his statement and then he was taken to the same room with the same detective present, and none of the strickland attenuation factors were present. I am also asking that the Court make a firm statement that the taint doesn't really dissipate when you abuse a suspect, and that the Court won't tolerate that. Thank you very much. Thank you. Counsel for this day. May it please the Court. Counsel. I'm Assistant Attorney General Josh Snyder on behalf of the people of the State of Illinois. And I would like to start on the question of process. What is the statutory framework that we're operating within? Because that's really important. As Petitioner noted, this is an extraordinary procedure for determining factual claims of torture. What does that mean? Now, the parties agree that when the Commission refers a claim to the circuit court, and it's the Cook County Circuit Court. That's the only court with jurisdiction. When the Commission refers a claim to the Cook County Circuit Court under the Act, the Court has to conduct an evidentiary hearing on that claim and determine whether the Petitioner is entitled to relief. But what the parties don't agree on is the question that's before the Court this morning. And that question is, what exactly is the claim that the circuit court is reviewing? What's it holding that evidentiary hearing on? Because it's clear, and the parties don't disagree, that the claim that was before the Commission is a statutory claim of torture, which is defined under Section 5 of the Act as a claim that the person was tortured into confessing, and that tortured confession was used to obtain his conviction. If the Commission finds, as the Commission puts it, probable cause to believe that that statutory claim of torture has merit, in other words, if it finds probable cause to believe that the person, in fact, was tortured into confessing and that that confession was used to obtain his conviction, then it refers the case to the circuit court. And under the plain language of the Act and the structure of the Act, it is clear that that evidentiary hearing that the circuit court then conducts upon referral by the Commission is an evidentiary hearing on the statutory claim of torture that was referred by the Commission based on the finding of probable cause. It is not an evidentiary hearing on some other claim, such as the distinct constitutional claim of an involuntary statement, which has different elements than a statutory claim of torture, and which is outside of the jurisdiction of the Commission to refer to the circuit court for review in the first place. So the circuit court is simply looking at whether or not the claim of torture should be confirmed. That's exactly right. So the plain language of the Act really provides us a helpful guide, and as informed by the administrative interpretation by the Commission through its decision. So just starting with the Section 10 of the Act, it's an extraordinary procedure to investigate and determine factual claims of torture. So a factual claim of torture has two distinguishing factors that make it very unlike a constitutional claim of an involuntary statement. First is it's a claim of torture. It is not a claim of coercion or that the statement was involuntary for some non-torturous reason. It's a claim of torture. And although the statute doesn't define the term, as Justice Session noted, the Commission defined it by regulation, and it adopted an administrative regulatory definition of torture that is entirely consistent with the common meaning, which is severe physical or mental suffering or severe pain or suffering, whether physical or mental, intentionally inflicted for the purpose of extracting a confession. And the Commission has really emphasized in its opinion that that is not – there's a material distinction between torture and coercion, even physical coercion. And when we look at totality of the circumstances, we're looking to the totality of the circumstances, not determine whether under the totality of the circumstances the statement was involuntary or the statement was coerced, but whether under the totality of the circumstances, the statement was a product of torture. Ginsburg. Excuse me, Counsel. So are you saying we shouldn't look at the totality of circumstances? Oh, no. We absolutely must look at the totality of circumstances. But the question is, what are we looking at the totality of the circumstances to determine? Are we looking at all of the circumstances to answer the question, was the statement voluntary? Or are we looking at all of the circumstances to answer the question, was the statement tortured? And the answer under the Act is we look at all of the circumstances to ask, answer the question, was this statement the product of torture, not merely involuntary because there are lots of circumstances. I'll put it this way. Every tortured statement is involuntary. Not every involuntary statement is tortured. And that's the distinction that the Act is reaching through this extraordinary process. The other critical distinction for a statutory claim of torture is in that phrase in Section 10, a factual claim of torture. That's an unusual phrase. I don't know that I've actually seen it anywhere else in any statute, a factual claim. And it's deliberate. The General Assembly did not use that fairly unique turn of phrase for no purpose. If we look at just legislative history, one of the House sponsors of the Act, Representative Turner, said specifically that the purpose of the Act is to, quote, look at cases where torture has been alleged to see if, in fact, the allegation is substantiated, if, in fact, there was torture. And so the question that is being adjudicated in a statutory claim of torture is fundamentally a question of historical fact. Was the person tortured? It is not a question, as it would be in a constitutional claim of involuntary statement, would this evidence of involuntariness or this evidence of coercion warrant suppression? Because as that claim has been construed in the context of, for example, a post-conviction hearing, evidentiary hearing, it wouldn't – the question isn't whether the person was, in fact, coerced, but whether the evidence of coercion, if presented at a suppression hearing, would likely result in the suppression. And that is simply irrelevant to a question of torture, because suppression is irrelevant to a statutory claim of torture. A statutory claim of torture is more expansive in some ways than a constitutional claim, because it does not matter whether the tortured confession was actually presented at trial, or even if the person went to trial. All that's required is that the tortured confession in some way have been used to obtain the conviction. So if the person pleads guilty, that, of course, waives a claim that their confession was involuntary. Let's find that in the statute, what you're describing here. Where do you see here in the statute or the legislative history that the legislature meant to have the court look just at the torture idea and not on the larger issue of coercion? At the end of the day, isn't that – the goal of the statute is to review statements that were coerced because of violence? It is not. And the reason it's not – so I'll take that in two pieces. So first, where in the Act do we see that? And we see that specifically in the fact that the Act refers to the claim exclusively as a claim of torture. And what has to be found at every step of the process is torture. So at the initial preliminary screening by the commission, it's looking whether the person has alleged a claim of torture. If they have an alleged claim of torture under the Act, then it's dismissed summarily. It then goes on to the second stage, that formal inquiry. This is the non-adversarial proceeding before the commission where they hear whatever evidence the Petitioner or at that point the claimant offers, along with whatever additional evidence the commission independently chooses to obtain through its exercise of its investigative powers. At that point, it needs to find sufficient credible evidence of torture to refer the case to the circuit court. So coercion is not the focus of the Torture Act, unsurprisingly. It's torture. And this is something that the administrative agency, the commission, as the administrative agency charged with implementing this Act, has been very clear about in its decisions. And we cite a number of them in our brief. Ginsburg. Counsel, while it's not the focus, are you – it sounds like you're suggesting there should be excluded coercion as the – when looking at the totality of circumstances.   That's not what I'm suggesting. Coercion is, of course, relevant to whether someone was tortured. But the ultimate question for whether the claim is meritorious is whether they were tortured. If they were coerced but not tortured, it's not a meritorious claim of torture. That's what the commission – Given the definition of torture as defined by the rules where you have the infliction not just of physical but of mental suffering, how do you separate that? How do you – you know, because when we talk about coercion, it is, in fact, mental. It is those techniques. So when they define torture by saying mental, severe mental anguish, how can you say that the definition of torture wouldn't include coercion? Well, it does include coercion. But it is, as the commission has put it in one of its decisions, not mere coercion. The difference between torture and coercion is not – it is one of severity. So a person can be coerced by being threatened. But the commission has made clear that in some circumstances, under the totality of the circumstances, threats may inflict a level of mental suffering sufficient to meet the definition of torture. But in some circumstances – Like denying a medication, you know, for a life-threatening illness. Sure. Exactly. So there are many circumstances where a person may suffer mental – or where mental suffering may be inflicted intentionally for the purpose of extracting a confession, which would rise to the level of torture. But the ultimate question is not whether they were coerced. It's whether they were tortured. And so that is a difference in threshold, in the same way that whether a statement is involuntary is not the relevant inquiry. We're still looking at the totality of the circumstances, but we're looking at what the totality of the circumstances show. And what it has to show is torture. And returning to Justice Tice's question about why is the purpose not just to resolve coercion, and this sort of turns to the petition – what I understand Petitioner's petition to be, which is once a claim of torture is referred to the circuit court, it doesn't – they don't have to prove torture anymore. They just have to prove coercion. In other words, the claim of torture – torture ceases to be relevant. Now we're just looking at a regular constitutional claim of involuntary statement. That is fundamentally not what the Torture Act is directed at. And the reason we know that is – there are a couple of reasons in the statute itself. One is it says torture. As the administrative agency charged with construing it said, they said torture. They could have said coercion. They could have said involuntary. And they didn't. They chose the word torture. And that was deliberate. But the other reasons are if this was simply a procedural exception to the sorts of procedural bars that might prevent someone from raising a claim through the normal channels of a post-conviction petition, if it was just to exempt them from res judicata or to exempt them from the cause and prejudice test, then the way that the Act is structured makes very little sense, because the Fifth Amendment right against compulsory self-incrimination applies uniformly throughout the State, and it applies at all times. And under the Act, the only claims that may be filed are claims of torture in Cook County. And the only claims of torture that can be filed are claims that are filed within 10 years of the enactment, in 2009, in other words, by August 10, 2019. And that would make no sense if the purpose was simply to provide another mechanism of validating the constitutional right against involuntary statements, because that really was my question. What was the harm? Why not just have a motion to suppress statements as we would in any right? Sure. And the answer, this the answer harkens back to something the Petitioner said, which was this Court should answer the question, what should the statute look like? And that is just not the Court's role in construing the statute. If the answer is why not do that, the answer in statutory construction questions in cases is because that was not the General Assembly's intent. Fundamentally, the Court's goal in construing the statute is to give effect to the General Assembly's intent. And what the General Assembly intended was to provide an extraordinary procedure to allow review of claims of torture, and it provided extraordinary relief that's not available for claims of involuntary statements. You can get a certificate of innocence. You can't get that for a claim of involuntary statement under the Post-Conviction Hearing Act. In fact, you can't even get that for a claim of actual innocence under the Post-Conviction Hearing Act. To get a certificate of innocence, you need to start a separate proceeding to petition for that certificate. Why couldn't the legislature say, torture is extraordinary, so therefore, we're going to carve out some extraordinary remedy? That's exactly what they did. And it makes perfect sense that because they're providing an extraordinary remedy for this extraordinary claim, that it is limited to that extraordinary claim. It is not simply a procedural bypass for the Post-Conviction Hearing Act procedural bar. If they wanted to do that, they would simply have amended the Post-Conviction Hearing Act. The other reason that we know that this is not simply a gateway is those temporal and geographical limits on a claim of torture, that it has to be in Cook County. If you're tortured in Winnebago County, the Torture Hearing Act has no remedy for you. It has to be within 10, filed within 10 years. If you're tortured in 2020, the commission will not entertain your claim. And the reason for that is because this is not a general vindication of the universal right to not have your – to not be compelled to self-incriminate. It is responding to a specific historical problem at a specific time and place. When we look at the legislative history, we see that it was – and I think the parties agree on this – the reason the Act was enacted was to respond to the discovery that there had been torture in Chicago under Commander John Burge and the officers under his supervision. In fact, when the statute was initially enacted, torture was defined in terms of torture by Commander John Burge and the officers under his supervision. It was subsequently amended to be limited only to claims of torture in Cook County. But the fact that it is only in Cook County, and the fact that it is only within the period that was sort of expected to be necessary to resolve claims of torture under that regime, is indicative that this is really not a general savings clause for involuntary statement claims. This is a specific extraordinary procedure to address a specific extraordinary claim and provide specific extraordinary relief. Ginsburg. What deference does the circuit court owe to the commission on the question of whether torture occurred? Sure. None. As the appellate court held in 2016 in People Be Christian, which I would direct the Court to, that was the first decision of the appellate court to really construe the Act. It explained the three-step process. And the three-step process is the first two are before the commission. There is the initial screening, which is, does this person allege a cognizable claim of torture under the Act? If they do, then they have that formal inquiry, where then the commission makes a finding of probable cause. They say, we determine whether there is sufficient evidence to warrant a day in court to get this person evidentiary on the claim. But the commission is very careful to say in its decisions and also in the regulations that a finding that there is sufficient evidence to warrant a judicial hearing, an evidentiary hearing, is not a finding that the person was tortured or that it's even more likely than not that this person was tortured. All it is is a finding that the low referral threshold has been satisfied. Whether the claim is actually meritorious then goes to the circuit court. And in the same way that a probable cause determination in a criminal trial doesn't in any have any sort of estoppel effect on the subsequent trial, the actual hearing on the merits on the applicable standard. So what is the extent of the circuit court's jurisdiction under the Act? The circuit court's jurisdiction is limited to considering whether the person has a meritorious claim of torture. And so what is reviewing, to return to the initial question, I think, was what is under referred for judicial review, what is being referred? And what's being referred is the claim of torture that the commission found probable cause to believe may be meritorious. It's not the probable cause determination itself. Although I would like to take a moment to address an argument from the reply brief that allowing the people to challenge the sufficiency of the evidence of the statutory claim of torture at the evidentiary hearing is somehow an impermissible second bite at the apple to challenge the referral decision. Because that is, that confuses the roles of the commission and the circuit court under the Act. Again, the commission's role is to conduct a non-adversarial administrative proceeding to find a probable cause. It then refers that case to the circuit court where there's then the full evidentiary hearing where the evidence is tested through the adversarial process and the court ultimately determines whether the claim actually is meritorious. And that distinction in roles is also reflected in the – so there are two reasons why it's not a second bite at the apple. One is procedural. The first is that the process before the commission is non-adversarial. The people aren't a party to it, and so they can't appeal from that administrative decision. They're not a party to the administrative proceeding. The second is fundamentally they are different considerations. Determination that there is some evidence that warrants an evidentiary hearing, that there is probable cause to believe that the claim of torture is meritorious is fundamentally a different question than whether after a full evidentiary hearing the claim has been proved. And so that's why, because there are different questions tried before different bodies with different parties under different standards considering different evidence, there's no estoppel from that preliminary probable cause determination on the ultimate factual determinations bade by the circuit court as the fact finder determined whether the person was in fact tortured in the confessing and that confession used to obtain their conviction. And so here, as we point out in our brief, from pages 55 to 60, I apologize for directing to that chunk, but here when we review the circuit court's review of the evidence and finding that the evidence was insufficient to prove torture by a preponderance of the evidence, that was not against the manifest weight of the evidence standard, which is the one that governs factual findings by a fact finder in proceedings such as this. That's exactly what Christensen explained, and actually Christensen affirmed the denial of relief on the basis that the trial court's finding that there was no torture was not against the manifest weight of the evidence. That's what Gibson suggested when it said that it was going to remand for the circuit court to reconsider the evidence and determine, make the credibility determinations in light of an adverse finding that it was directed to make. That's what the appellate court found in Johnson, and that's what the administrative agency, the commission, has adopted in its opinions where it endorses repeatedly Christian's explanation of how the act is supposed to work and what the roles of the commission are and what the roles of the circuit court is. And so unless there are any further questions from the court, for those reasons as well as the reasons in our brief, we ask that the court affirm the denial of relief on the circuit court. Counsel had one additional question. I'm taking it by what you've argued, that it's your position there was no obligation on the part of the State to meet their burden, so to speak, because of the nature of the court's inquiry. Yes, so our position would be that the State doesn't have a burden at this stage. It's a question of whether the petitioner has proved by preponderance the evidence that his claim is meritorious, and that's why all of the evidence presented, including ASA Mabane, was actually petitioner's witness, and the State elicited evidence through cross-examination and through the presentation of exhibits that called that evidence into question. Thank you. In response to the appellant, I have a question about this unusual statute that only applies to Cook County, and that I'm looking at the statute. I'm not sure what is the time frame. It says this act applies to claims of torture filed not later than 10 years after the effective date of this act, and that was passed in July of 16. Originally, it was August of 09. So are we talking about a 10-year period to 26? Is that the idea? I believe it was extended, but the reason why it was limited and drafted in this way was because Cook County had a torture problem. There were detectives that we now know about who were torturing people into confessing, and in this case, Mr. Fair was one of those people. Nobody has ever denied that he was tortured, that he was abused, that he was denied his right to counsel, that he suffered in the ways in which he claims to have suffered. And so I want to make sure we're clear on, we're not reading torture out of the act here. Mr. Fair proved a claim of torture to the commission. He then survived an appeal on having proved his claim of torture to the commission. And so he won the right to a hearing, and this Court has to decide, well, what should that hearing have been? And that hearing should be meaningful. The legislature created this statute because there was a problem in Cook County, and they wanted to make it easier and show that they cared that these people had been tortured and provide a meaningful remedy. And the State's reading the same question I asked your opponent. What deference does the circuit court owe to the commission on the question of whether torture occurred? So the question of whether torture occurred is answered by the commission, and then the case is referred, and then the circuit court has a different question. The circuit court then has a very open-ended question by the statute of whether or not, of what remedy is warranted. Sotomayor, that wasn't my question. Does the circuit court owe any deference? No. I guess, but it need not re-adjudicate the torture question, nor should it re-adjudicate the torture question, but it does not need to defer to the commission's findings. It conducts its own hearing, a hearing of first regard, and in that hearing, it decides whether or not suppression is warranted, or it decides what it thinks it should decide. As we talked about in my opening, it's a very broad question. So should the circuit court be trying to decide whether or not torture occurred? No, the commission decides who the torture victims are, and it says, here are a group of cases that we believe the person was tortured, so we're going to let them bypass all of these other procedural hurdles so that you can take a look at this case and decide whether or not these statements should be suppressed. So when we talk about the circuit court receiving a case for review, what does that mean? So Section 50 does not talk about re-adjudicating the question of torture. Section 50 is the portion of the statute that tells what the court should do, and it is a very broad section. It talks about receive proofs in any of these ways and enter a judgment of any of these types of judgments. It does not ---- But it uses the statute twice. It uses the expression review, if I may follow through. Justice Holder Weiss ---- In Section ---- What does that mean? What does review mean? In Section 50, it is not asked to review. It is told it may receive proofs of these forms. This in Texas official is post-commission judicial review. That's the title of the section. Right. Review of the claim, of this claim that this Petitioner has brought of coercion. And how do we know it's a vehicle? The Attorney General himself, in passing this Act, told us it's a vehicle. Then-Senator Raul, then-Senator Raul said there are people who may currently be incarcerated who may not need to be there, and there are people who may have served time who may want to clear their name, and this torture commission would allow them a vehicle to do so. It is not the intention of the legislator to create something that imposes a higher burden than what the Post-Conviction Hearing Act imposed or than what a post-trial motion would have imposed. It is the legislature's recognition that this is a problem that needs remedy, and so that once it gets to the judicial review in the circuit court, it provides a very open-ended set of types of evidence and types of remedies that the court can then implement, depending on its review. And at that point, expanding the question into coercion is both authorized by the omission of any limiting language in the statute, by the legislative intent that is discussed, and by just using logic that the legislature was not trying to create something that would be harder for these victims, who we know were victims. The commission has found to be a torture victim. We wouldn't be wanting to create something that would necessarily make it harder from them. I don't understand how it makes it harder. Well, because if you look at a suppression hearing, the question that the court below believed it was going to answer, you have standards for suppression that the State the defendant has to make initial burden, and the State has a burden to rebut those claims. Mr. Fair puts on a tremendous amount of evidence showing that his statements were coerced, and if it were a suppression hearing, the State needs to rebut those claims. But if it's whatever the State is trying to contort the statute into, he needs to prove torture, and the State carries no burden, that's what my opponent from the State just said. The State doesn't have any burden at all to rebut these claims when you have known torturers who have been accused in a very telling way of having abused Mr. Fair, and they carry no burden whatsoever. That's a much higher imposition on a Petitioner than you would have if the State carried a burden to rebut the claims, for instance. Counsel, I have a question because I think we're all struggling to figure out what it is that the trial court is reviewing. So, you're saying that when there's a...when the Commission finds a, you know, makes a probable cause determination that there was torture, it goes to the trial court. At that point, the trial court then is looking at things that occurred at the trial level to see the impact that the torture had on the results of the case? Every single case that has done this so far, the appellate court has looked at was the statement coerced. With the exception of this case, every single one, whether they found for the Petitioner or not, they in some way asked, they brought in the question to, was this statement coerced? Let's look at the totality of the circumstances, because that's what the Supreme Court tells us we should do when there are allegations. But in doing so, under the umbrella from the Commission that, yes, this was a case of torture, now look at everything that happened as a result. Correct. With the exception of the fair court originally, every single one accepted the referral, accepted the fact, okay, we have a torture victim here, let's figure out whether his statement should be allowed or not. But when you talk about reviewing a decision, that doesn't generally involve accepting that decision as fact. It's reviewing it, making a determination whether or not that decision was appropriate, whether or not there was substantive evidence to support that decision. I would encourage you to really look at the language in Section 50. It doesn't talk about reviewing the Torture Commission decision. And there was review of the Torture Commission decision. I'm sorry, I don't, it appears I, I would love to break it down if I have the time with you, because I'm not, I'm not sure where the disconnect is happening here. The, there was a review, it happened in the appellate court, Mr. Fair prevailed. So then it goes to the circuit court under Section 50, and the circuit court says that the court may, Section 50 says the court may receive proofs by these different ways. In its discretion, the court may order petitioner brought before for hearing. If the court finds in favor of the petitioner, it shall enter appropriate order with respect to the judgment or sentence and any, and it lists any types of orders. It never says that there has to be a review of the torture decision. And in this case, and in the procedural world, it gets, that decision was appealed. It already was appealed to the appellate court. It already was review of the referral itself. So what, I guess I'm, I'm not sure if I'm answering your question. I apologize if I'm not. Do you want to, I would love to address your concern, and I'm not, I get the feeling I'm not, and I apologize for that. The Torture Act should mean something, and it shouldn't mean that torture victims have a harder burden than what they would have if they proceeded under the Post-Court Conviction Act or under any other realm. In this case, what the statute says is prove your torture to the commission, get a referral to the court, the court conducts a hearing. That's what happened here. Mr. Farriff proved his torture to the court, he survived the appeal on that, he got his hearing. The court did what every other appellate court has done so far in interpreting the statute. It conducted a hearing on whether or not the statement was coerced. However, there were errors that happened below. They didn't look at the totality of the circumstances, and they didn't do a proper attenuation analysis. Court, I think the statute allows for what the court did and what the court so far, all of them universally have done, which is conduct a suppression hearing. And the question here is whether or not there were errors. In this case, Mr. Farriff's allegations have gone unrebutted, and he is entitled to relief. Thank you. Thank you so much, both counsels. This case, agenda number three, number 128373, people of the state of Illinois versus Darrell Fair, will be taken under advice.